**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Timekeeping Systems, Inc., | ) | Case No. 1:13CV01201 |
| | ) | 1:16CV02261 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| PatrolLIVE International, Inc., et al., | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendants. | ) | **ORDER** |
| | ) | |

Plaintiff TimeKeeping Systems, Inc. ("TimeKeeping") brings this suit against Defendant

DwellingLIVE, Inc., d/b/a/ PatrolLIVE International ("PatrolLIVE"). Plaintiff prays for damages

and injunctive relief for patent infringement and copyright infringement. Among other things,

Plaintiff alleges infringement of U.S. Patent No. 7,027,955 (the "'955 Patent"). Defendant has

answered and counterclaimed for a declaratory judgment that Defendant has not infringed the '955

Patent, and that the '955 Patent is invalid.

Presently, this matter comes before the Court subsequent to a claim construction hearing

held pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 116 S.Ct. 1384, 134

L.Ed.2d 577 (1996). The Court has considered the parties' arguments at the hearing, the parties'

opening and response briefs on claim construction (Doc. #31, 32, 35, 36, and 37), and the parties'

joint claim construction and prehearing statement (Doc. #38). The Court now construes the

disputed patent claims.

## I.    **BACKGROUND**

The '955 Patent is directed to a guard tour system that uses electronic hardware and software components to insure that a patrol guard or officer monitors all desired areas of one or more buildings or property.  (Doc. #32-1 p. 426, '955 Patent, col. 1, ln. 12-15.)  The guard tour system includes a computer program that enables various electronic hardware components to function as a guard tour system.  The patent specification describes that, in one embodiment, "the system may comprise one or more touch button readers, one or more downloaders for use with the touch button readers and a plurality of touch memory buttons located along a guard tour."  (*Id.*, col. 2, ln. 8-12.)  In an alternate embodiment, "[t]he electronic hardware may comprise * * * a positioning system and a data acquisition system, for acquiring information regarding the location, time and other information relating to certain locations or objects along a guard tour."  (*Id.*, col. 2, ln. 4-8.)  The positioning system allows "time-stamped location information [to] be selectively acquired relating to particular locations or objects along a guard tour."  (*Id.*, col. 2, ln. 12-14.)  According to the specification, "[t]he system may comprise an integrated positioning system, such as a GPS unit or receiver, cell phone locator system, local positioning system or other suitable system, to allow collection of various guard and/or vehicle position information as well as other information."  (*Id.*, col. 2, ln. 14-19.)  Consequently, as a guard progresses through the tour, the system permits the guard to acquire or generate time-stamped location information relating to the position of the guard as well as to particular sites or objects along the tour path. The guard tour system further allows this information to be transferred to a central computer for processing immediately or at the end of the tour.  (*Id.*, col. 1, ln. 66 – col. 2, 1n. 37.)

Included in the patent specification is a flowchart (Figure 7) illustrating how the computer program and hardware of the guard tour system can be set up. (*Id.* p. 417.) This set up process is used to define locations or objects, or both, using positioning information, memory buttons, or other "checkpoint" devices that describe and identify officers, incidents, and locations. At the beginning of the setup process, the user has the option of defining patrol records that may include such information as clients, facilities, groups and/or locations. The next step in the setup process is to install the necessary hardware that acquires or "reads" the desired information. After the appropriate hardware is installed, the user can add locations or memory buttons, or both, by assigning a description such as location name, officer name, description of an incident, or any other characteristic necessary for a particular patrol. The user repeats these steps until all positions, touch memory buttons, or checkpoints are defined.

The patent specification also includes a flowchart (Figure 8) which illustrates making a particular patrol or tour with a location reader, *i.e.*, a data acquisition device. (*Id.* p. 418.) The guard or officer starts the patrol by going to a first location and acquiring time-stamped position information and/or reading the checkpoint device with the reader at the location. These steps are repeated at each location on the patrol. If another patrol is to be made by the same officer, the officer returns to the first location and repeats these steps.

Plaintiff contends that the invention claimed in the '955 Patent differs from certain prior art because the physical location of the guard is tantamount to the physical location of the reader device carried by the guard. The claimed guard tour system prevents a guard from falsifying a report because information concerning the time and physical location of the guard while on patrol is combined with the information read at the checkpoint to ensure that the guard was in fact at the checkpoint at the indicated time when the checkpoint information was obtained. (Doc.

#50.) Plaintiff further contends that the invention allows increased flexibility for guard patrols, because an officer would not be required to visit desired locations in a pre-determined sequence. (Doc. #53, Claims Construction Hearing Transcript, p. 13, ln. 1-18.)

In its Initial Non-Infringement Contentions Pursuant to L.P.R. 3.3, Defendant's non-infringement position appears to be based on the contention that the accused devices do not infringe because "there is no monitoring 'when on a * * * patrol,' but only after a patrol is completed." (Doc. #32-5 p. 522.) Defendant also contends that its "system does not actively monitor during a tour, but processes data after the tour is complete." (*Id.* p. 523.)

The Court notes that neither the validity of the '955 Patent in light of prior art, nor alleged infringement by Defendant are at issue here. Rather, the sole issue before the Court is construction of the disputed claim terms.

## II.    STANDARD OF REVIEW

Claim construction takes into account the intrinsic record of a patent, which includes the: (1) specification of the patent; (2) prosecution history; and (3) prior art. *Rawplug Co., Inc. v. Illinois Tool Works, Inc.*, 11 F.3d 1036, 1041 (Fed. Cir. 1993). Claim construction always begins with the claims themselves. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). While the words of a claim are given their ordinary and customary meaning, the ordinary meaning cannot be read in a vacuum. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005). The context of the surrounding words of the claim must be considered in determining the ordinary and customary meaning of the disputed terms. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003). The ordinary and customary meaning must be read in the context of the written description and the prosecution history. *Phillips*, 415 F.3d at 1313. Moreover, "the ordinary and customary meaning of a claim term is the meaning that

the term would have to a person of ordinary skill in the art in question at the time of the invention, *i.e.*, as of the effective filing date of the patent application." *Id.* In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent to lay people. *Id.* at 1314.

In assessing the meaning of a claim, a court must always review the specification. *See Vitronics Corp.*, 90 F.3d at 1582. The specification is the part of the patent that "teaches" the invention so that one skilled in the art can make and use it. *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1334 (Fed. Cir. 2003). The specification is highly relevant to claim construction because it may contain special or novel definitions of claim terms when the patentee has chosen to be his own lexicographer, *see Vitronics*, 90 F.3d at 1582, or it may help to resolve ambiguity when the ordinary and customary meaning of a term is not sufficiently clear, *see Teleflex, Inc. v. Ficosa North Am. Corp.*, 299 F.3d 1313,1325 (Fed. Cir. 2002). Thus, the specification is the "'single best guide to the meaning of a disputed term,'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp.*, 90 F.3d at 1582), and is usually "dispositive," *Vitronics Corp.*, 90 F.3d at 1582. The specification is, "thus, the primary basis for construing the claims." *Phillips*, 415 F.3d at 1315 (quoting *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)).

The final source of intrinsic evidence plays a role similar to the specification in the claim construction analysis. The prosecution history of the patent – the complete record of the proceedings before the Patent and Trademark Office – "provides the evidence of how the PTO and the inventor understood the patent" and should be considered by the court. *Phillips*, 415 F.3d at 1317. "[T]he patent applicant's consistent usage of a term in prosecuting the patent may enlighten the meaning of that term." *Metabolite Lab., Inc. v. Laboratory Corp. of Am.*

*Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004). The prosecution history may contain "express representations made by the applicant regarding the scope of the claims." *Vitronics Corp.*, 90 F.3d at 1582. But any limitation found in the history must be "clear and unmistakable." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1307 (Fed. Cir. 2003).

If a claim is amenable to more than one construction, the claim should, when possible, be construed to preserve its validity. *See Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1384 (Fed. Cir. 2001)). The court is not permitted to redraft claims, however. *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995).

### III.   LAW AND ANALYSIS

The parties have submitted a joint claim construction chart, indicating that they disagree regarding the meaning of certain patent terms. (Doc. #38-1.) The primary construction dispute arising from the '955 Patent involves whether the information acquired during a patrol must be downloaded or transferred from the reader device to the central computer in real time, *i.e.*, immediately after the information is acquired while the guard is actually performing the patrol. Plaintiff argues in favor of constructions of the '955 Patent claims which acknowledge two different actions that occur with information acquired during a patrol: (1) generating or acquiring the information with the data acquisition device, and (2) transferring or downloading the information to the central computer. Plaintiff contends that claim construction thus should reflect that certain actions "[do] not have to be in real time," because the transferring or downloading information from the data acquisition device to the central computer need not occur immediately during the patrol, but rather may take place days or weeks later. Defendant argues that any construction that includes "does not have to be in real time" gratuitously adds a

limitation to the patent terms that flies in the face of the terms' ordinary and customary meanings. The parties also disagree as to the construction of other claim terms that do not directly involve a dispute over whether an action must take place in real time.

The parties dispute the following terms of the '955 Patent:

1. Monitor/Monitoring (claims 1, 15, 18, and 30);

2. Evaluate/Evaluating (claims 1, 15, 18, and 30);

3. Guard (claims 1, 2, 3, 9, 15, 18, 20, 21, 22 and 30);

4. Patrol/Patrolled (claims 1, 2, 3, 9, 15, 18, 20, 21, 22 and 30);

5. Guard Patrol[s] (claims 1, 2, 3, 9, 15, 18, 20, 21, 22 and 30);

6. Sites (claims 1, 15, 18, and 30);

7. Defining (claim 1);

8. When On A Guard Patrol (claims 1, 2, 3, 9, 15, 18, 20, 22 and 30);

9. Guard Location Information/Guard Route Information (claim 9);

10. Reader Device (claims 7 and 9);

11. At Any Time (claims 15 and 30);

12. Downloading (claims 15 and 30);

13. Automatically Generating Data (claim 30);

14. Global Positioning Receiver, Cellular Communication Network and Local Positioning System (claims 16 and 19);

15. Officer Records (claim 21); and

16. Group (claim 21).

The '955 Patent claims containing the terms in dispute state, in pertinent part:

What is claimed is:
1. A computerized method of monitoring and evaluating guard patrols of one or more sites, comprising the steps of:

a)  defining at least one checkpoint to identify at least one location to be patrolled by a guard;

b)  defining at least one patrol record to compile informa[]tion relating to said at least one location to be patrolled by the guard;

c)  providing a positioning system to generate data relating to the location of the guard to be included as part of said information;

d)  detecting said information obtained from said positioning system and said at least one location patrolled by the guard;

e)  storing said information within said at least one patrol record; and using said information to monitor and evaluate the guard patrol and the location of the guard when on a guard patrol.

2.  The method according to claim 1, wherein said step b comprises programming a computer with information describing records including said data relating to the location of the guard when on a guard patrol.

3.  The method according to claim 1, wherein the data relating to the location of the guard when on a guard patrol is stored within said at least one patrol record and is displayed in a graphical form to show the route of a guard patrol.

* * *

7.  The method according to claim 1, wherein said positioning system is adapted to be configured within a reader device.

* * *

9.  The method according to claim 7, wherein said reader device is carried by the guard when on a guard patrol and provides information selected from the group consisting of guard location information, guard tour information, guard route information, or combinations thereof.

* * *

15.  A data processing system for monitoring and evaluating guard patrols of one or more sites comprising:

a)  a central computing device;

b)  a device for gathering information obtained from one or more checkpoints during a guard patrol by a guard of one or more sites, said information gathering device comprising a positing system for generating data relating to the location of the guard at any time when on a guard patrol; and

c)  a system for downloading said information into said central computing device.

16.  The system according to claim 15, wherein said positioning system is selected from the group consisting of a global positioning system receiver, a cellular communication network, a local positioning system, and combinations thereof.

* * *

18. A computer program product for use with a data processing system for monitoring and evaluating guard patrols of one or more sites, said computer program product comprising:

    a)   a computer usable medium having computer readable program code means therein to gather information from a positioning system relating to the location of a guard when on a guard patrol of one or more sites; and

    b)  a computer usable medium having computer readable program code means to therein to selectively download said information into said data processing system.

19. The computer program product according to claim 18, wherein said positioning system is selected from the group consisting of a global positioning system receiver, a cellular communication network, a local positioning system, and combinations thereof.

20. The computer program product according to claim 18, further including computer readable program code means for defining at least one patrol record on a said computer readable medium to compile information from said positioning system relating to the location of a guard when on a guard patrol.

21. The computer program product according to claim 20, where said information relating to the guard patrol record is comprised of information selected from the group consisting of officer records, incident records, location records, clients, facilities, groups, locations, times at locations, routes, vehicle position, vehicle speed, and combinations thereof.

22. The computer program product according to claim 20, further including computer readable program code means for displaying said at least one patrol record and at least a map showing the route of the guard when on said guard patrol.

* * *

30. A data processing system for monitoring and evalu[]ating guard patrols of one
or more sites comprising:

    a)  a central computing device;

    b)  a device for gathering information from one or more checkpoints during a guard patrol by a guard of one more [sic] sites, said information gathering device compris[]ing a positioning system for generating data relating to the location of the guard when on a guard patrol and for automatically generating data relating to the location of the guard at any time when on a guard patrol at periodic intervals; and

    c)  a system for downloading said information into said central computing device.

(Doc. #32-1.)

In addition to the disputed terms, the parties' have stipulated to the construction of certain claim terms. They have submitted the agreed-upon constructions to the Court as part of the parties' joint claim construction and prehearing statement.

The Court has considered the parties' arguments regarding the disputed constructions which the parties have presented during the claims construction hearing, in their respective briefs, and in the joint claim construction chart and prehearing statement. The Court now turns to construction of the '955 Patent terms.

### A. Monitor/Monitoring (claims 1, 15, 18, and 30)

The parties disagree regarding the proper construction of the terms "monitor" and "monitoring" as used in claims 1, 15, 18, and 30 of the '955 Patent. Defendant asserts that the transitive verb "monitor(ing)" should be construed to mean "observe(ing), record(ing) or detect(ing); check(ing) continually" consistent with portions of definitions provided by *Dictionary.com*. Plaintiff counters that that "monitor(ing)" should be defined as "keeping track of or checking; does not have to be in real time." Having reviewed the intrinsic evidence consisting of the patent claims, the specification, and the prosecution history, and the extrinsic evidence consisting of dictionary definitions, the Court adopts Plaintiff's construction of "monitor(ing)," including the phrase "does not have to be in real time."

Defendant argues that because the Court is bound to construe patent terms according to their ordinary and customary meaning, the Court should adopt *Dictionary.com* definition of "observe(ing), record(ing) or detect(ing); check(ing) continually." The Court notes that the first part of Plaintiff's proposed construction of "monitor(ing)" also is derived from a dictionary definition. Specifically, the online *Merriam-Webster* dictionary defines the term "monitor(ing)" in part as "keep[ing] track of, or check[ing]." Https://merriam-webster.com/dictionary/monitor.

Neither party makes an argument regarding why one dictionary's definition should take precedence over the other.  Rather, the parties' real dispute is over Plaintiff's inclusion of the phrase "does not have to be in real time."  Defendant claims that this definition should be rejected because it "flies in the face of both the plain language of the claims and the prosecution history."  Defendant further asserts that "monitor(ing)" as that term is used in the '955 Patent is limited to real time activity in connection with the data generated by a positioning system.  (Doc. #37 p. 8.)  This Court disagrees.

The Federal Circuit has cautioned that dictionary definitions, while "[w]ithin the class of extrinsic evidence * * * [that] can be useful in claim construction[,]" are "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."  *Phillips*, 415 F.3d at 1318, 1319.  "[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification."  *Id.* at 1321.  "In light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims."  *Id.* at 1316 (citing *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1371 (Fed. Cir. 2003)).  Indeed, the Federal Circuit has made clear that "'[t]he best source for understanding a technical term is the specification from which it arose, informed, as needed, by the prosecution history.'"  *Phillips*, 415 F.3d at 1315 (quoting *Multiform Desiccants*, 133 F.3d at 1478).  "'The descriptive part of the specification aids in ascertaining the scope and meaning of the claims inasmuch as the words of the claims must be based on the description. The specification is, thus, the primary basis for construing the claims.'"  *Phillips*, 415 F.3d at 1315 (quoting *Standard Oil Co.*, 774 F.2d at 452.)

Defendant's proposed construction of the term "monitor(ing)" as subject to a real time limitation ignores that the '955 Patent specification contains an embodiment of the invention where the information generated by positioning system can be stored on the reader device before being transferred to a central computer. (Doc. #32-1 p. 432, '955 Patent, col. 13, ln. 44-45.) Indeed, the specification describes that "the reader [] is capable of storing the information for days or weeks if necessary." (*Id.*) The specification also discloses that the information can be transferred at the end of one or more patrols. (*Id.*, col. 13, ln. 40-41.) Thus, while Plaintiff concedes that the information is generated by the positioning system in real time, "monitoring" cannot take place until after the information has been transferred to the central computer. *A fortiori*, "monitoring" cannot occur until after the acquired information has been transferred from the reader, which can occur immediately, or, as expressed in the specification, may occur at a future time.

The Federal Circuit has cautioned that a claim interpretation that excludes a preferred embodiment from the scope of the claim "is rarely, if ever, correct." *Vitronics Corp.*, 90 F.3d at 1583. The Federal Circuit has only interpreted claims to exclude embodiments where those embodiments are clearly disclaimed in the specification itself or in the prosecution history. *Id.* No such disclaimer exists in this case, either in the specification, or in the prosecution history.

Defendant points to the prosecution history of the '955 Patent, apparently to argue that Plaintiff disclaimed any embodiment of the invention not limited to real time "monitor(ing)." Specifically, Defendant cites to Plaintiff's argument to the patent examiner pursuant to an amendment to the '955 Patent, wherein Plaintiff stated:

> One of the unique features of the Applicants' invention is that the touch button reader can include an integrated positioning system. In this manner, the location of the patrol guard or officer when on tour can be monitored. Additionally, when the patrol guard or officer is driving from

one location to another location as part of a tour, the position of the
vehicle that he is driving can be monitored. The Applicants' guard tour
monitoring system of the present invention can be configured to record the
location of the patrol guard or officer when on a tour, at periodic times, on
demand, or continuously. Thus, information as to the location of the
patrol guard or officer when on a tour is available whenever needed. In
addition to the information as to the location of the patrol guard or officer
when on a tour, the time of when he is at a location can also be logged.

(Doc. #32-2 p. 463, 6/7/2004 Amendment.)

Defendant further cites to Plaintiff's statement in the prosecution history that
"independent claims 1 and 15 have been amended to specifically recite that the positioning
system generates data as to the location of the guard when on a guard patrol." (*Id.* p. 464.)
Moreover, Defendant points out that in distinguishing the Richman reference (disclosing prior
art), Plaintiff argued that the reference did not mention "providing location data selected from
the group consisting of continuous position information, position information acquired at
predetermined time or distance intervals, on demand position information, or combinations
thereof." (*Id.* at 468.) Defendant also cites to Plaintiff's statement to the examiner that, "[I]n
order to more specifically define the Applicants' invention, claim 27 has been amended to
include the limitation in method step a) thereof that information is acquired data from a
positioning system which generates data relating to the location of a guard when on guard
patrol." (Doc. #32-4 p. 514-515, 11-18-2004 Amendment.)

The Federal Circuit has recognized that the prosecution history "can often inform the
meaning of the claim language by demonstrating how the inventor understood the invention and
whether the inventor limited the invention during the course of the prosecution." *Phillips*, 415
F.3d at 1317. However, the Federal Circuit has cautioned that, "because the prosecution history
represents an ongoing negotiation between the PTO and the applicant, rather than the final
product of that negotiation, it often lacks the clarity of the specification and thus is less useful for

claim construction purposes." *Id.* Here, contrary to Defendant's position, none of the prosecution history cited clearly and unmistakably disclaims the embodiment in the specification wherein information generated by the positing system can be stored in a reader and later transferred to a central computer for "monitoring" in the future, rather than in real time. The central computer device cannot use the information generated by the positioning system to monitor and evaluate a guard patrol or the location of a guard when on a patrol until it has received this information, and the specification of the '955 Patent makes clear that the transfer of this information to the central computer device need not occur in real time. Further, although the prosecution history reveals that a guard's position "can be monitored when on guard patrol," and that the positing system can generate and make available data related to a guard's location in real time, nothing in the prosecution history shows that "monitoring" of the data must occur in real time.

For all of the foregoing reasons, the Court adopts Plaintiff's proposed construction of the term "monitor(ing)." Rather than gratuitously adding a limitation not contained in the patent terms, the Court finds that including the phrase "does not have to be in real time" in the definition of "monitor(ing)" reflects the meaning of the term as written and as set forth in the specification. On the other hand, construction of the term "monitor(ing)" subject to a real time limitation would impermissibly deny meaning to an embodiment expressed in the specification that Plaintiff has not disavowed. Accordingly, the term "monitor(ing)" as used in the '955 Patent is construed to mean "keeping track of or checking; does not have to be in real time."

## B. Evaluate/Evaluating (claims 1, 15, 18, and 30)

The parties dispute the construction of the term "evaluate(ing)" in claims 1, 15, 18, and 30 of the '955 Patent. Plaintiff argues that the term should be construed to mean "analyzing

information gathered during a patrol."  Defendant contends that "evaluate(ing)" should be constructed to mean "to judge or determine the significance, worth or quality of."  Having reviewed the respective positions of the parties and the intrinsic evidence, the Court finds that Plaintiff's construction of the term "evaluate(ing)" should be adopted.

With respect to the term "evaluate(ing)", the specification states that "[t]he location data will enable supervisory personnel to determine if a guard or vehicle was present at a specific location at specific times, followed a prescribed route, did or did not make unauthorized stops, did or did not stop for an excessive amount of time, did or did not exceed the speed limit, did or did not exceed predetermined operational characteristics of the vehicle or like evaluations." (Doc. #32-1 p.434, '955 Patent, col. 18, ln. 25-32.)  All of these evaluations are made in the context of analyzing information gathered during a patrol.  Thus, Plaintiff's proffered construction of "evaluate(ing)" as "analyzing information gathered during a patrol" is supported by the specification.

On the other hand, the specification does not reference Defendant's proposed construction "to judge or determine the significance, worth or quality of."  Moreover, the Court finds that Defendant's proposed construction is vague and ambiguous, and would not assist the Court or jury in determining what is covered by the claim language.

For these reasons, the Court adopts Plaintiff's construction of the term "evaluate(ing)." Accordingly, the proper construction for the claim term "evaluate(ing)" is "analyzing information gathered during a patrol."

## C.      Guard (claims 1, 2, 3, 9, 15, 18, 20, 21, 22 and 30)

The parties disagree as to the proper construction of the term "guard."  Plaintiff argues that "guard" in the context of the '955 Patent means "a person whose job or duty it is to observe

and report the condition of an area."  Defendant contends that the term "guard" should be construed as "any individual whose activities include regular monitoring and accountability." The Court adopts Plaintiff's proposed construction of the term "guard."

Plaintiff's proposed construction of "guard" is fully supported by the specification's description of an officer or guard making "a patrol of locations [], by acquiring time stamped position information, and/or reading the * * * checkpoint device with the reader [] at each location [].  * * * In addition, the officer will look for any incidents along the patrol route []. * * * If there are incidents to report, the officer will acquire time stamped position information * * * to report such an incident."  (Doc. #32-1 p.432, '955 Patent, col. 13, ln. 14-26.)

Defendant's criticism of Plaintiff's proposed construction of "guard" as unduly limited to security applications is misplaced.  Notably, each of the examples of a "guard" disclosed in the specification and mentioned by Defendant in its brief — an inspector, maintenance checker, cleaning personnel, hospital patient checker, and the like —  refers to "a person whose job or duty is to observe and report the condition of an area."

Moreover, the specification does not support Defendant's proposed construction.  Rather, the specification states that "[a]lthough the preferred embodiment of the disclosed guard tour system is directed toward security applications, the system can also be used in * * * just about any application which requires regular monitoring and accountability."  (Doc. #32-1 p. 421, '955 Patent, col. 3, ln. 1-19.)  Thus, the specification states that it is the application, *i.e.*, the system, which necessitates the "regular monitoring and accountability," not the guard.

In accordance with the foregoing, the Court adopts Plaintiff's construction of "guard." The term "guard" shall be construed to mean "a person whose job it is to observe and report the condition of an area."

**D.      Patrol/Patrolled (claims 1, 2, 3, 9, 15, 18, 20, 21, 22 and 30)**

The parties propose competing constructions of the verb "patrol."  Plaintiff argues that the term means "traveling around an area to observe and report its condition."  Defendant proposes that "patrol" should be defined as "to pass along a road, beat or the like."  The Court is persuaded that Plaintiff's proposed construction of "patrol" is supported by the specification and adopts that version.

Defendant's definition of "patrol" once again is taken from *Dictionary.com*.  There is no reference in the specification to a "patrol" being the act of "passing along a road or beat."  Nor is a road or beat shown in Figure 8 in the specification of '955 Patent, which shows a guard making a typical patrol with a location reader.

The Federal Circuit has made clear that while extrinsic evidence such as dictionary definitions "can shed useful light on the relevant art," it is "'less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).  Here, Figure 8 and the specification support Plaintiff's definition of "patrol."

The first paragraph of the specification states that "the present invention relates to a system comprised of electronic hardware and software, that insures that patrol guards or officers monitor all desired areas of one or more buildings or property."  (Doc. #32-1 p. 426, '955 Patent, col. 1, ln. 12-15.)  Figure 8 illustrates a guard "making a typical patrol with a location reader []." (*Id.* p. 423, '955 Patent, col. 13, ln. 5-6.)  Describing Figure 8, the specification states that, during a "patrol," an officer or guard:

> makes a patrol of locations [], by acquiring time stamped position
> information, and/or reading the * * * checkpoint device with [the] reader
> [] at each location []. [These steps] are repeated at each location on the
> patrol.  In addition, the officer will look for any incidents along the patrol

route []. * * * If there are incidents to report, the officer will acquire time stamped position information * * * to report such an incident. If there are no incidents to report, but there are additional checkpoints on the patrol [], the officer proceeds to the next location [] and repeats [these steps].

(Doc. #32-1 p. 432, '955 Patent, col. 13, ln. 13-28.)

Thus, the specification makes clear that for a guard to "patrol" means for the guard to travel to one or more locations, look at or observe the condition of the area, and report his or her presence at the area and whether an incident exists by acquiring time stamped information. Consequently, Plaintiff's proposed construction of "patrol" as "traveling around or through an area to observe and report its condition" are supported by the use of these terms in the context of the specification.

In light of the foregoing, the Court construes the verb "patrol" to mean "traveling around or through an area to observe and report its condition." The term "patrolled" simply is the past tense of the verb "patrol." To the extent necessary, the Court construes the noun "patrol" to mean "the act of traveling around or through an area to observe and report its condition."

**E. Guard Patrol[s] (claims 1, 2, 3, 9, 15, 18, 20, 21, 22 and 30)**

The Court has already construed the terms "guard" and "patrol." There is no separate dispute with regard to the term "guard patrol." Further explanation is not likely to aid the Court or the jury in understanding the term. Accordingly, no further construction of the patent term "guard patrol" is necessary.

**F. Sites (claims 1, 15, 18, and 30)**

The construction of the patent term "sites" is in dispute. Plaintiff proposes to construe the "sites" to mean "a place on a guard patrol that may include one or more locations." Defendant advances the definition "the position or location of a town, building or the like." The Court adopts Plaintiff's construction of "sites."

Plaintiff's proposed construction of "sites" as "a place on a guard patrol that may include one or more locations" is supported by the intrinsic evidence. The specification states that "[a]s a guard or night watchman progresses through the guard tour, the system allows the guard to selectively acquire time-stamped location information relating to particular sites or objects along the guard tour path." (Doc. #32-1 p.426, '955 Patent, col. 2, ln. 26-29.) The use of "site" or "sites" in the context of the specification makes clear that this term refers to a place or places visited on a guard patrol or tour. Moreover, the claim language makes clear that each site may include one or more locations. For example, element (a) of claim 1 defines "at least one checkpoint to identify at least one location to be patrolled by a guard." (*Id.* p. 434, col. 18, ln. 51-53.)

Unlike Plaintiff's proposed construction, Defendant's proposed construction of "sites" as "the position or location of a town, building, or the like" is not supported by the specification in any discernable way. Defendant has adopted a definition from *Dictionary.com* to explain the claim language. As discussed, extrinsic evidence such as a dictionary definition cannot take precedence over the specification and other intrinsic evidence. In particular, "[t]he specification is the primary basis for construing the claims." *Phillips*, 415 F.3d at 1315. Accordingly, Defendant's proposed construction of "sites" must be rejected in favor of Plaintiff's definition which is informed and supported by the specification.

For the reasons stated, Plaintiff's proposed construction of "sites" is adopted. "Sites" is construed to mean "a place on a guard patrol that may include one or more locations."

### G.     Defining (claim 1)

The parties disagree as to the proper construction of the patent term "defining." Plaintiff argues that the term should be defined as "creating or describing on a computer." Defendant

proposes to define the term as "describing, identifying or establishing (fixing)." Plaintiff's definition is supported by the specification and will be adopted.

The intrinsic evidence supports Plaintiff's proposed construction of "defining." The specification states that:

> Fig. 7 illustrates the process of setting up the guard tour computer program and hardware. * * * Setup is primarily used to define locations and/or objects using positioning information, memory buttons or other "checkpoints" that describe and identify officers, incidents, and locations. * * * At the start of the Setup [] process the user has the option of defining patrol detail records that include but are not limited to clients, facilities, groups and/or locations []. These are defined as shown in Fig. 5 and as described above. The user also has the option of defining rules []. The process of defining rules is shown in Fig. 15 * * *."

(Doc. #32-1 p. 431, '955 Patent, col. 11, ln. 22-24.) Moreover, Figs. 5, 7, and 15 illustrate that the checkpoints, patrol records, and rules all are defined or created using a computer program running on a central computer. The preamble of the claim is consistent with this disclosure as it is directed to "a computerized method." Thus, Plaintiff's proposed construction is wholly supported by the intrinsic evidence, including the claim language and the specification.

Defendant's proposed construction of this claim term apparently is taken from *Dictionary.com*, although none of the definitions proffered by *Dictionary.com* completely align with Defendant's proposed construction. Moreover, Defendant's proposed construction is contradicted by the intrinsic record, including the claim language itself.

Element (a) of claim 1 of the '955 Patent states "defining at least one checkpoint to identify at least one location to be patrolled by a guard." (*Id.* p. 434, col. 18, ln. 57-58.) The Federal Circuit has stated that the use of two different terms in close proximity in the same claim gives rise to an inference that each term should be given a separate meaning. *See, e.g., Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 93 F.3d 1572, 1579 (Fed. Cir. 1996) (stating if two terms described a single element, "one would expect the claim to consistently refer to this

element [with one or the other of the two terms], but not both, especially not within the same clause"). Defendant's proposed construction of "defining" to include "identifying" is contrary to the claim language's separate use of these terms. Defendant does not point to any reference from the specification of the '955 Patent that refers to "defining" as "identifying," "establishing," or "fixing." Accordingly, Defendant's proffered construction is rejected.

For the foregoing reasons, Plaintiff's proposed construction of the term "defining" is adopted. "Defining" shall mean "creating or describing on a computer."

**H.     When On A Guard Patrol (claims 1, 2, 3, 9, 15, 18, 20, 22 and 30)**

The parties disagree regarding the proper construction of the term "when on a guard patrol." Plaintiff argues that the term should be constructed as "during the time that the guard was or is making a patrol; does not have to be in real time." Defendant wishes to construe the term "at the time of or during a patrol; in real time." Plaintiff's construction is supported by the intrinsic evidence and shall be adopted.

Claim 1 and element (e) thereof state, in pertinent part:

> A computerized method of monitoring and evaluating guard patrols of one or more sites, comprising the steps of * * * storing said information within said at least one patrol record; and using said information to monitor and evaluate the guard patrol and the location of the guard when on a guard patrol.

(Doc. #32-1 p. 434, '955 Patent, col. 18, ln. 1-4.) The phrase "when on a guard patrol" clearly modifies the phrase "location of the guard," not "to monitor and evaluate." Construing the phrase "when on a guard patrol" to mean the location of the guard "during the time when the guard was or is making a patrol" is consistent with the meaning of this phrase in the context of the claim language. Even if the phrase "when on guard patrol" did modify "to monitor and evaluate," it would be nonsensical to read a real time limitation into "when on a guard patrol" in

this claim, when the Court has found that the term "monitor(ing)" contains no such limitation. Because claim terms are normally used consistently throughout the patent, the usage of the term "when on a guard patrol" in claim 1 without a real time limitation provides guidance regarding the meaning of the same term in other claims. Phillips, 415 F.3d at 1315.

Plaintiff's proposed construction is also supported by the patent specification. Figure 8 illustrates a guard "making a typical patrol with a location reader []." (Doc. #32-1 p. 432, '955 Patent, col. 13, ln. 5-6.) The specification goes on to state:

> As the system can record the position of the reader [], either on a patrol, or when the reader is placed in a vehicle, positional information can be recorded, either continually, on demand, or periodically, and the information downloaded and analyzed. * * * If there is another patrol to be made [] by the same officer [], the officer will go back to step 150. If the next patrol is to be made by another officer, the reader [] can be passed to the next officer to make the patrol. The next officer inputs ID information or reads his officer button [] to begin the next patrol. If there are no additional patrols to be made the information can be downloaded [] from the reader []. Information does not have to be downloaded from readers [] at specified time periods such as at the end of every patrol or shift. The reader [] is capable of storing the information for days or weeks if necessary.

(*Id.* p. 432, col. 13, ln. 28-45.) Thus, the specification makes clear that positional information concerning the location of the guard, *i.e.*, "the location of the guard when on patrol," is generated during the time the guard is or was on patrol. As this Court previously discussed, this information need not be transferred and analyzed in real time during the patrol, as the specification discloses an embodiment of the invention where the information can be stored on the reader device for days or weeks prior to being transferred. The specification also discloses another embodiment of the invention where the information can be transferred at the end of one or more patrols.

The prosecution history also supports Plaintiff's proposed construction. The phrase "when on a guard patrol" was added in an amendment to claims which ultimately issued as claims 1, 15, and 18. (Doc. #32-2, 6/7/04 Amendment.) In connection with the amendment, Plaintiff noted that the "guard tour monitoring system of the present invention can be configured to record the location of the patrol guard or officer when on a tour, at periodic times, on demand, or continuously. Thus, information as to the location of the patrol guard or officer when on a tour is available whenever needed." (*Id.* at p. 26.) Plaintiff further explained that "in order to more specifically define the Applicants' invention, independent claims 1 and 15 have been amended to specifically recite that the positioning system generates data as to the location of the guard when on a guard patrol." (*Id.* at p. 27.) These arguments elucidate that the addition of the phrase "when on a guard patrol" means that the information is or was generated while the guard is or was performing the patrol.

In distinguishing prior art, Plaintiff further argued that "Applicants' invention does not utilize a computer checkpoint and a base station central processing unit, as in the Richman reference, but does utilize a positioning system so that the location of the guard when on a guard patrol can be determined and subsequently reported to a third party." (*Id.* p. 37.) Plaintiff also argued that "the Whitham reference does not include means for automatically generating location data at periodic intervals for subsequent retrieval and analysis based on stored time information[.]" *Id.* None of these arguments support limiting the asserted claims to require transfer or analysis of information concerning "location of the guard when on patrol" to be in real time.

As discussed, the specification makes clear that the positional information concerning the location of the guard, *i.e.*, "the location of the guard when on patrol" is generated during the time

the guard is or was performing a patrol, but that it need not be transferred or analyzed in real time, *i.e.*, during the patrol. Indeed, the specification discloses an embodiment of the invention where the information can be stored on the reader device for days or weeks before being transferred. The specification also discloses another embodiment of the invention where the information can be transferred at the end of one or more patrols. Adopting Defendant's construction of "when on a guard patrol" to include a real time limitation would impermissibly exclude these embodiments from the scope of the claims of the '955 Patent, despite the absence of a clear disclaimer of those embodiments in the specification or prosecution history. *See On-Line Techs.*, 386 F.3d at 1138. Accordingly, and for all of the stated reasons, "when on a guard patrol" shall be construed to mean "during the time that the guard was or is making a patrol; does not have to be in real time."

## I.       Guard Location Information (claim 9)

The parties disagree as to the proper construction of "guard location information." Plaintiff contends that the proper construction is "information regarding where a guard is or has been during a patrol." Defendant argues that the term means "information regarding where a guard is at points in time." The Court adopts Plaintiff's construction.

The parties agree that the real dispute is whether the language "or has been on a patrol" as proffered by Plaintiff is contrary to the proper construction of the term "when on a guard patrol" in independent claim 1, from which claim 9 depends. The Court has determined that "when on a guard patrol" is not limited to actively monitoring while the guard is on a patrol. Accordingly, the term "guard location information" is properly construed as "information regarding where a guard is or has been during a patrol."

**J.      Guard Route Information (claim 9)**

The parties' dispute the proper construction of "guard route information."  Plaintiff's proposed construction is "information regarding a set of checkpoints a guard visits during a patrol."  Defendant's proffered construction is "information regarding the path a guard takes during a patrol."  The Court adopts Plaintiff's construction.

Defendant agrees with Plaintiff's position that "guard route" is synonymous with a "set of checkpoints."  However, Defendant argues that Plaintiff's proposed construction is erroneous because it "is devoid of the 'sequence.'" (Doc. #31 p. 11.)  However, the citation Defendant relies on for its proposed construction is intended to distinguish the patented invention from the prior art on the ground that the patented invention does not, in fact, require a guard to follow a predefined series of checkpoints.  The prior art required the guard "to progress through the tour according to a predefined sequence of checkpoints," which the '955 Patent characterizes as a "counterproductive" arrangement.  (Doc. #32-1 p. 426, '955 Patent, col. 1, ln. 33-37.)  Thus, Defendant's construction of "route" to mean a "path" connoting a specific "sequence of checkpoints" is contrary to the intrinsic evidence.  Accordingly, the Court construes "guard route information" to mean "information regarding set of checkpoints a guard visits during a patrol."

**K.      Reader Device (claims 7 and 9)**

The construction of the '955 Patent term "reader device" is in dispute.  Plaintiff argues that "reader device" should be construed to mean "a hand-held data acquisition device."  Defendant proposes the definition "[an] implement adapted to obtain or 'read' information from sources with which it can communicate."

Defendant concedes that Plaintiff's proposed construction of "reader device" is correct if it is limited to "a data acquisition device."  (Doc. #31 p. 9.)  Defendant only disputes Plaintiff's

proposed construction to the extent that Defendant believes the claims are not limited to "hand-held" data acquisition devices.  Defendant is mistaken.  The '955 Patent uses the terms "reader," "acquisition device," and "hand-held data acquisition device" synonymously.  Specifically, the '955 Patent states:

> A hand-held data acquisition device [] may be carried by a guard or the like.  The data acquisition device [] may then be used to acquire time-stamped location data relating to a guard tour or the like, instead of or in combination with using touch memory buttons or the like.

(Doc. #32-1 p. 428, '955 Patent, col.  5, ln. 42-47.  The patent further states:

> In the embodiment of the present invention wherein the reader [] includes an integrated positioning system, the guard carries the reader [] with an integrated positioning system, and guard position information may be gathered as the guard makes rounds.

(*Id.* p. 428, '955 Patent, col. 6, ln 62-66.)

Accordingly, Plaintiff's definition of "reader device" is consistent with the plain language of the claims.  Defendant's definition, on the other hand, is vague and ambiguous, such that it does not enable the jury to discern what the patentee covered by the claims.  Defendant uses the term "read" to define "reader."  If the term "reader" is ambiguous, further defining this term with reference to the word "read" is not helpful to a jury.  Defendant's proposed construction also adds further uncertainty in that it adds the phrase "from sources with which it can communicate."

For the stated reasons, the Court adopts Plaintiff's construction of "reader device."  The term "reader device" is construed to mean "a hand-held data acquisition device."

### L.     At Any Time (claims 15 and 30)

The construction of the patent term "at any time" is contested.  Plaintiff proposes the construction "information relating to the place or position of the guard can be generated whenever needed during a patrol, including but not limited to when the guard is at a checkpoint;

information does not have to be transferred in real time." Defendant proposes construing the term "at any time" as "whenever; not restricted to time; when on a tour, at periodic times, on demand, or continuously; in real time." The Court adopts Plaintiff's proposed construction.

The Court rejects Defendant's proposed construction of "at any time" because it is internally contradictory. The first portion of Defendant's proposed construction, "whenever," is simply the *Dictionary.com* definition of the term. However, Defendant's proposed construction is internally inconsistent as it construes this claim language to mean both "whenever; not restricted to time" and "in real time." It is unclear how something that must occur in real time is simultaneously unrestricted as to time. Defendant's definition is therefore contradictory, confusing, and would not assist the Court or jury in understanding the meaning of the term "at any time" in the context of the '955 Patent.

On the other hand, Plaintiff's proposed construction of "at any time" to exclude a real time limitation is supported by the specification. The specification states:

> In the embodiment of the present invention wherein the reader [] includes an integrated positioning system, the * * * guard position information may be gathered as the guard makes rounds. In this manner, the guard's location can be monitored at all times along with guard tour information. Additionally, when the guard is driving as part of a guard tour, the position of the vehicle can be monitored. As an example of operation, the system could be configured to record the position of the reader [] when disconnected from a downloader, at periodic times, on demand or continuously.
>
> * * *
>
> As the system can record the position of the reader [], either on a patrol, or when the reader is placed in a vehicle, positional information can be recorded, either continually, on demand or periodically, and the information downloaded and analyzed.

(Doc. #32-1 p. 428-429, 432, '955 Patent, col. 6, ln. 62 – col. 7, ln. 6; col. 13, ln. 28-33.) While the specification supports this information being generated and available for transfer at any point

in time during the guard patrol, it makes clear that the information need not be transferred in real time. Indeed, the specification discloses an embodiment where the information can be transferred at the end of one or more patrols. (*Id.*, col. 13, ln. 40-45.)

The prosecution history also supports Plaintiff's proposed construction. The phrase "at any time" was amended to claims which ultimately issued as claims 15 and 30. (Ex. 32-3, 8/23/05 Amendment.) In connection with the amendment, Plaintiff represented to the patent examiner that:

> One of the unique features of the Applicants' inventions is that the touch button reader can include an integrated positioning system. In this manner, the location of the patrol guard or officer can be monitored at all times. * * * Also, the Applicants' guard tour monitoring system records the location of the patrol guard or officer when on a tour, at periodic times, on demand, or continuously. Thus, information as to the location of the patrol guard or officer when on a tour is available at any time. In addition to the information as to the location of the patrol guard or officer when on a tour, the time at which he is at a location is also recorded.

(*Id.* p. 14.) Plaintiff also stated that, "At the end of the tour, the patrol guard or officer downloads the collected information or data into a central computer control station through use of a mobile downloader, a direct downloader, or a modem downloader. After downloading, the central computer is operable to print reports with respect to the computer." (*Id.* at p. 13-14.) The prosecution history lends further support to the fact that, while this information may be generated at any time, Plaintiff's statements do not support limiting the claim language to require the transfer of information in real time.

Defendant also points to the amendment where the phrase "at any time" was added to argue that the transfer of information is limited to real time. However, Defendant is unable to point to any clear and unmistakable disavowal of claim scope to real time. The only reference to "real time" identified by Defendant in the entire

prosecution history of the '955 Patent is Plaintiff's statement that "[t]he Sotodani device does not transmit the inspector's position information in real time or near-time." (Doc. #31 p. 18.)  Defendant ignores, however, that Plaintiff told the examiner that "the Sotodoni reference differs from Applicants' invention in that it does not record the inspector's information for later use * * * [and] does not transmit the inspector's position information in real-time or near time which would be necessary if the position information were to be time-stamped at another location." (*Id.* p. 16.)  Nowhere in the description of the Sotodani reference does plaintiff clearly and unambiguously state that its claimed invention was limited to real time applications.  Thus, the single reference to "in real time or near time" does not give rise to a prosecution disclaimer limiting the claims of the '955 Patent to real time transfer of information about the location or position of the guard.

For all of the aforementioned reasons, the Court adopts Plaintiff's construction of the patent term "at any time."  The term shall mean "information relating to the place or position of the guard is generated whenever is needed during a patrol, including but not limited to when the guard is at a checkpoint; information does not have to be transferred in real time."

**M.      Downloading (claims 15 and 30)**

The parties propose competing constructions of the term "downloading" as that term is used in claims 15 and 30 of the '955 Patent.  Plaintiff argues in favor of the construction "transferring the information gathered during the patrol; information does not have to be transferred in real time."  Defendant contends that, in the context of the '955 Patent,

downloading means "transferring data from one device or element to another." The Court adopts Plaintiff's construction of "downloading."

The parties agree that "downloading" means the transfer of information or data. Defendant would have the Court further add the limitation of "from one device or element to another." However, the claim language already specifies that "downloading" is a transfer of "information into said central computing device." (Doc. #32-1 p. 435, 436, claims 15 and 30.) Further limitation of the term is not necessary to aid the Court or the jury in understanding the term as written.

Defendant also objects to Plaintiff's proposed construction for adding the limitation of "information does not have to be transferred in real time." However, Defendant created a dispute as to whether this claim language is limited to the real time transfer of information when it argued that this claim limitation was missing from the accused devices because "[t]he system does not actively monitor during a tour, but processes data after the tour is complete." (Doc. #32-5, Ex. A, p. 2.) Plaintiff's proposed limitation is consistent with the specification, which discloses an embodiment where information can be transferred at the end of one or more patrols. (*Id.* p. 432, col. 13, ln. 40-41.)

### N.    Automatically Generating Data (claim 30)

The parties dispute the proper construction of the term "automatically generating data relating to the location of the guard at any time when on a guard patrol at periodic intervals" found in claim 30. The text of claim 30 describes, in pertinent part:

> [a] data processing system for monitoring and evaluating guard patrols of one or more sites comprising * * * a device for gathering information from one or more checkpoints during a guard patrol by a guard of one more [sic] sites, said information gathering device compris[]ing a positioning system for generating data relating to the location of the guard when on a guard patrol and for automatically generating data relating to

the location of the guard at any time when on a guard patrol at periodic intervals.

(*Id.* p. 436, col. 22, ln. 14-24.)

Plaintiff proposes construing the term as "information showing where a guard is or has been during a patrol is obtained at different times during the patrol without needing the guard to take any affirmative action; information does not have to be transferred in real time." Defendant proposes construing the term as "independently generating information as to a guard's location at any time the guard is on a patrol and a[t] recurring times." The Court declines to adopt either of the parties' proposed constructions, and instead finds that the terms should be read according to their ordinary and customary meaning.

The Court has already construed the terms: (1) "guard location information;" (2) "at any time;" and (3) "when on a guard patrol." There is no separate dispute as to these terms. Further explanation of these terms as they relate to "automatically generating data" is not likely to aid the Court or the jury in understanding these terms. Accordingly, no further construction of these terms is necessary.

The parties ask the Court also to construe the term "automatically generating data." However, there does not appear to be a dispute over whether the invention described in the '955 Patent automatically generates data. Indeed, Plaintiff concedes that it does, and Defendant does not disagree. The Court declines to construe claim limitations which are not in dispute between the parties. *Vivid Techs., Inc. v. Amer. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("only those terms need to be construed that are in controversy, and only to the extent necessary to resolve the controversy.")

The Court finds that the terms not previously construed herein should be construed according to their ordinary and customary meaning without imposing any limitations or restrictions not specifically included in the claim language itself. To the extent the parties request the Court to address whether the claim language requires the real time transfer of automatically generated data, the Court has already addressed that issue in connection with other claim terms. No further explanation is necessary to aid the Court or the jury in understanding the term "automatically generating data relating to the location of the guard at any time when on a guard patrol at periodic intervals" as it is used in the '955 Patent.

### O. Global Positioning Receiver, Cellular Communication Network and Local Positioning System (claims 16 and 19)

The Court has reviewed the positions of the parties regarding the terms "global positioning receiver," "cellular communication network," and 'local positioning system." Defendant has conceded that the accused devices have a "global positioning receiver." (Doc. #32-5, Initial Non-Infringement Contentions, Exhibit A, p. 1.) Defendant does not contend that either the "cellular communication network" claim limitation or the "local positioning system" claim limitation provide a separate ground for non-infringement. (Doc. #35, Exhibit F, Defendant's First Supplemental Non-Infringement Contentions, p. 5.) The Court declines to construe claim limitations which are not in dispute between the parties and will not offer claims constructions on an advisory basis that are not germane to the issues raised in this case. *See Vivid Techs., Inc.*, 200 F.3d at 803.

### P. Officer Records (claim 21)

The parties agree that the term "officer records" should be construed consistently with the Court's construction of the term "guard" (as set forth above), and the parties' stipulated construction of the term "records" (as stipulated by the parties and set forth below). Additional

construction would not assist the Court or the jury in understanding the meaning of "officer records" as that term is used in the '955 Patent. Accordingly, no further construction of the term is necessary.

### Q.   Group (claim 21)

The '955 Patent defines the disputed claim "group." Specifically, dependent claim 9 states, "wherein said reader device * * * provides information selected from the group consisting of guard location information, guard tour information, guard route information, or combinations thereof." (Doc. #32-1, '955 Patent, p. 435, col. 19, ln. 27-38.) Similarly, dependent claim 16 and 19 recite, "wherein said positioning system is selected from the group consisting of a global positioning receiver, a cellular communication network, a local positioning system, and combinations thereof." (*Id.* p. 435, col. 20, ln. 20-36.) Further, dependent claim 21 recites "where said information * * * is comprised of information selected from the group consisting of officer records, incident records, location records, clients, facilities, groups, locations, times at locations, routes, vehicle position, vehicle position, vehicle speed, and combinations thereof." (*Id.* p. 435, col. 20, ln. 30-36.)

The Court finds that there is no basis upon which to deviate from the term "group" as written. Accordingly, the term "group" should be given its plain and ordinary meaning, without imposing any limitations or restrictions not specifically included in the claim language itself. Because further explanation is not necessary to aid the Court or the jury in understanding the term "group" as it is used with respect to the claimed invention, any proposed construction shall not be adopted.

**R.      Stipulated Term Constructions**

The parties have stipulated to constructions of certain claim terms, subject to this Court's approval.  The stipulated constructions are the following:

1.      Checkpoints:  "Particular locations that a guard must visit during the course of patrolling an area."

2.      Location:  "A place or position."

3.      Guard Tour Information:  "Information gathered during a patrol."

4.      Computer Program Product: "A computer program or software routine."

5.      Record:  "An accumulation of information."

6.      Patrol Record:  "An accumulation of information obtained from a patrol."

The Court has considered and approves the proposed stipulated constructions.

## II.   <u>CONCLUSION</u>

The disputed claims in the '955 Patent are construed as indicated in this opinion.  The jury will be so instructed at trial.


**IT IS SO ORDERED.**

   _s/John R. Adams_____
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE



**DATED**: 6/1/2017